# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

James Cartwright,
    Plaintiff,

v.

Woody, Jr., et al.,
    Defendants.

)
)
)
)
)
)
)

1:11cv1070 (JCC/JFA)

F I L E D

NOV 1 9 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

This Matter is before the Court on a Motion for Summary Judgment filed jointly by defendants Alfred Venable and Alonzo Pruitt. James Cartwright, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that staff at Richmond City Jail have violated plaintiff's right to freely exercise his religion and continue to provide him with unwholesome food in violation of his constitutional rights. Defendants Venable and Pruitt filed a joint Answer on March 2, 2012 and a joint Motion for Summary Judgment on March 29. Plaintiff was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). He filed an Opposition to the Motion for Summary Judgment on April 5, to which defendants filed a rebuttal on April 10. Also before the Court is plaintiff's Motion for Final Judgment filed on April 25, which the defendants opposed on April 27. For the reasons below, defendants' Motion for Summary Judgment will be granted, and plaintiff's Motion for Final Judgment will be denied, as moot.[1]

---

[1]     Initially, Plaintiff also alleged that staff, specifically E. Henry, denied his right to access to the courts by limiting his access to the law library at Richmond City Jail. However, by Order dated September 6, 2012, E. Henry was dismissed from this action pursuant to Fed. R. Civ. P. 4(m) because she was not served within one hundred twenty (120) days of the date the complaint was filed. As such, plaintiff's claim regarding denial of access to the courts must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for which relief can be granted.

    Section 1915A provides:

## I. Background

The uncontroverted facts are as follows:

Plaintiff was incarcerated at Richmond City Jail from September 22, 2010 to January 9, 2012. Mot. Summ. J. ¶ 3, ECF No. 24. To attend religious services, inmates occasionally must put their names on a sign-up sheet. Id. at ¶ 4.; Am. Compl. ¶ C, ECF No. 7. The Richmond City Jail has several more copies of the Bible than of the Koran. Mot. Summ. J. ¶ 8, ECF No. 24; Am. Compl. ¶ C, ECF No. 7. The parties disagree on several other facts that are relevant to this analysis.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter

---

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Analysis

### A. Free Exercise Clause

The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). To merit protection under the Free Exercise Clause of the First Amendment, a plaintiff must satisfy two threshold criteria. First, plaintiff must allege that his belief or beliefs are sincerely held. Wisconsin v. Yoder, 406 U.S. 205, 215–16 (1972). Second, plaintiff also must demonstrate that his claim is rooted in "religious" and not "purely secular" philosophical concerns. Id.; see

3

Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 713-14 (1981)

("Only beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion."). To be recognized as religious, sincerely held beliefs need not be "acceptable, logical, consistent, or comprehensive to others," Thomas, 450 U.S. at 714; based on the existence of a supreme being or beings, see Torcaso v. Watkins, 367 U.S. 488, 495 & n. 11 (1961); Myers v. Loudon County Public Schools, 418 F.3d 395, 411 (4th Cir. 2005) (quoting Torcaso, 367 U.S. at 495 n.11 for the proposition that the "Supreme Court has long recognized that some religions practiced in this country 'do not teach what would generally be considered to be a belief in the existence of God'"); or based in or on a mainstream faith. See Thomas, 450 U.S. at 714.

This does not end the analysis, for inmates' constitutional rights must be evaluated within the context of their incarceration. The Supreme Court has emphasized that "when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); accord, Dettmer v. Landon, 799 F.2d 929 (4th Cir. 1986), cert. denied, 483 U.S. 1007 (1987). At the same time, it is well recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974). "Running a prison is an inordinately difficult undertaking," and courts acknowledge that the task of doing so is "peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482 U.S. 78, 84-85 (1987). Therefore, "courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006). A prisoner's federal constitutional rights, including his sincere desire to practice

a religion, may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (citing Turner, 482 U.S. at 89).

### 1. *Use of Sign-up Sheet*

Plaintiff alleges that Richmond City Jail profiles inmates by religion because Muslim inmates, unlike Christian inmates, are required to sign up to go to service. Am. Compl. ¶ C, ECF No. 7. Plaintiff appears to state a free exercise claim. However, assuming without deciding that plaintiff's religious beliefs are sincerely held, defendants have established that the jail's policy that occasionally requires inmates to sign up to attend religious services is reasonably related to a legitimate penological interest. In a sworn affidavit, defendant Pruitt, who serves as Chief of Chaplains for the Richmond City Sheriff's Office, states that the sign-up sheets, which inmates must occasionally sign before attending religious services, are used "where disruptive behavior has become a problem, to track which inmates are attending services for the purposes that service is meant to serve, [to determine] whether the inmates are using it as a means to engage in behavior disruptive to others." Pruitt Aff. ¶ 2, ECF No. 24-2. Pruitt also asserts that "[i]nmates often attend religious services as a means to socialize, rather than to worship," id. ¶ 3, making the policy necessary on occasion. Defendants state that the sign-up sheets are used for "certain services, religious or otherwise, depending on the behavior of inmates on the tier[,]" Mot. Summ. J. ¶ 4, and argues that plaintiff has failed to show that his religious group has been treated differently than others, id. at 9. Because the minimal burden of signing one's name on a sheet before attending a religious service is reasonably related to the penological interests of monitoring inmates who may disrupt those services, plaintiff's rights have not been violated.

### 2. *Availability of Koran*

5

Plaintiff believes his rights were violated because "Bibles are everywhere, not a Koran is seen [sic] on a block." Am. Compl. ¶ C, ECF No. 7. However, defendant Pruitt explains that any discrepancy in the availability of the Bible and the Koran is unintentional. He states that the "only copies of the Bible, the Koran, the Book of Mormon, and other like religious texts found at the Jail are donated to the Jail or given to inmates from other sources. The Jail does not purchase any religious texts for inmate use." Pruitt Aff. ¶ 6, ECF No. 24-2. He furthers explains that "[m]ore copies of the Bible are donated to the Jail than any other religious texts, such as the Koran." Id. Because courts must defer to prison policies concerning general administration, a category into which the policy not to purchase religious texts would fall, plaintiff's rights have not been violated, and defendants' Motion for Summary Judgment as to the free exercise claim will be granted.

## B. Lack of Wholesome Food

Plaintiff alleges that the food "portion size are cut back on[.] [Y]ou can see through the meat[.] [W]e should be getting 3oz or 4oz[;] it may be 1oz." Am. Compl. ¶ E, ECF No. 7. He also alleges that the food is often served cold and that he fears that it contains bacteria. Id. He says he has "had the runs and fear of sickness and weight lost do [sic] to my knowledge of this." Id. Plaintiff appears to allege that these practices violate his Eighth Amendment right to be free of cruel and unusual punishment.

In the specific context of a claim that an inmate's Eighth Amendment rights have been violated by food he was served, it is well settled that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); see Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir.), cert. denied, 439 U.S. 837, (1978) (concluding inmate's allegation of failure to provide adequate

sanitary food service facilities can state a cognizable claim). Although the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the provision of inadequate food to state an Eighth Amendment violation. Wilson, 501 U.S. at 298; White v. Gregory, 1 F.3d 267, 268 (4th Cir. 1993), cert. denied, 510 U.S. 1096 (1994) (concluding that plaintiff failed to state a claim because he failed to allege "serious or significant physical or mental injury" from being served only two meals a day on holidays and weekends); Islam v. Jackson, 782 F. Supp. 111, 114–15 (E.D. Va. 1992) (holding that plaintiff who became ill after eating one meal but was treated immediately and suffered no lasting affects did not state a serious injury); Lunsford v. Reynolds, 376 F. Supp. 526 (W.D. Va. 1974) (determining that a claim of occasional incidents of foreign objects in food does not state Eighth Amendment claim).

Despite plaintiff's allegations that he may only receive one ounce of meat per day, the daily menus for the time period that plaintiff was at the Jail, which are attached to defendants' Motion for Summary Judgment, show that the Jail provided no fewer than sixty grams of protein, or eighty and a half ounces, to prisoners daily. Ex. A, ECF No. 24-1. In a sworn affidavit, Grace Miller, a registered dietician and independent contractor for the Richmond City Jail, states that "the protein provided was in the form of turkey, chicken, ham, fish, veal, peanut butter, eggs, cheese and milk." Miller Aff. ¶ 6., ECF No. 24-3. Ms. Miller further states that "[a]ccording to the [United States Department of Agriculture], adult men leading a sedentary lifestyle should receive 2000-2600 calories per day, which means men could receive as little as fifty grams of protein per day or 7.1 ounces . . . ." Id. ¶ 5. Defendants point out that the amount of protein on the Jail's menus for the time period in question was above that guideline. Therefore, defendants have shown that the food at Richmond City Jail is nutritionally adequate under Shrader, and plaintiff has failed to rebut that showing with anything more than conclusory assertions.

Finally, as to the temperature at which food is served, defendants have shown that plaintiff's allegations and fears concerning bacteria are unfounded. Attached to defendant Venable's sworn affidavit are health inspection reports, which show that the Health Department performed inspections on four different dates between December 2010 and December 2011. Ex. B, ECF No. 24-1. In a sworn affidavit, defendant Venable states that these reports "show food temperatures for hot holding and cold holding of foods were checked, . . . and they were found in compliance at the time of inspections." Plaintiff has failed to show that the conditions at Richmond City Jail presented an immediate danger to the health and well-being of the inmates who consume the food. Therefore, defendants' Motion for Summary Judgment will be granted as to plaintiff's claim concerning lack of wholesome food.

## IV. Conclusion

For the foregoing reasons, defendants Pruitt and Venable's Motion for Summary Judgment will be granted, and plaintiff's Motion for Final Judgment will be denied, as moot. An appropriate Order shall issue.

Entered this ___19th___ day of ___November___ 2012.

_____/s/_____
James C. Cacheris
United States District Judge

Alexandria, Virginia

8